UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

COREY A. ASKEW,

               Plaintiff,                         Case No. 1:07-cv-636

v.                                                     Honorable Gordon J. Quist

(UNKNOWN) BLAIR, et al.,

               Defendants.
_____/

**REPORT AND RECOMMENDATION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff shall pay the initial partial filing fee when funds are available. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, I recommend that Plaintiff's complaint be dismissed for failure to state a claim.

**Discussion**

I.  Factual allegations

Plaintiff is presently incarcerated at the Alger Maximum Correctional Facility, but complains of events that occurred at the Technical Rule Violation (TRV) Center in Lake County. A TRV program offers alternative placement for eligible parolees who have committed a technical violation of his or her parole and would otherwise be returned to a Correctional Facilities Administration institution for parole revocation proceedings. *See* MICH. DEP'T OF CORR., POLICY DIRECTIVE 06.03.104 (effective 2/1/2001). In his *pro se* complaint, Plaintiff sues Office of Legal Affairs Administrator Richard Stapleton and the following Lake County employees: Corrections Officers (Unknown) Blair, (Unknown) Drapper and (Unknown) DeWeerd, and Supervisor/Parole Officer Gary Holmstrom.

On September 2, 2006, Plaintiff received a Michigan Department of Corrections (MDOC) Misconduct Report for insolence. Plaintiff argues that the misconduct charge was in retaliation for exercising his right to be free of cruel and unusual punishment for "a lack of medical health care services." (Compl. at 6; docket #1.) On September 3, 2006, Plaintiff asserts that he also received a Misconduct Report for threatening behavior for the same reason. Later that day, the MDOC transferred Plaintiff to the Lake County Jail.

Defendant Holmstrom reviewed the misconduct charges with Plaintiff on September 7, 2006. At that time, Plaintiff argues that Defendants violated his due process rights by denying his requests for a hearings investigator, videotape evidence, witnesses and copies of his Misconduct Reports. On September 13, 2006, Defendant DeWeerd conducted a hearing for both misconduct charges. During the hearing, Plaintiff objected to the following:

> 1) The misconduct reports retaliatory [sic] issuance; 2) failure to receive prior notice of a hearing; 3) failure to receive assistance to aid in investigation of the charges; 4) failure to present or request evidence; 5) failure to present oral or written statement for official record; 6) failure to receive an impartial hearing[s] officer; and, 7) failure to receive an official written record of the decision based on competent, material and substantial evidence.

(Compl. at 7.) The Hearings Officer found Plaintiff guilty of each misconduct and sentenced him to five days toplock for each charge.

On September 14, 2006, Defendant Holmstrom terminated Plaintiff from the TRV "program . . ., thus canceling [his] projected release date of October 09, 2006." (*Id.*) Defendant Holmstrom also initiated Plaintiff's reclassification and transfer to a higher security level. On September 25, the MDOC transferred Plaintiff to the Charles Egeler Reception and Guidance Center. On October 11, 2006, Plaintiff requested a rehearing but Defendant Stapleton denied the request, allegedly because the hearings administrator's authority does not extend to minor misconduct violations. Plaintiff argues that he was convicted of major misconduct violations rather than minor misconduct violations.

Plaintiff asserts the following violations of his rights: (1) Defendants Blair and Drapper –

> grossly neglected to follow the procedures of the Michigan Department of Corrections policies, rules and regulations for the urgent/emergent health care services and for reporting [] major misconduct charge[s] [that] were based on retaliation which [they] maliciously and sadistically initiated with a deliberate indifference to [P]laintiff's Eighth and Fourteenth Amendment United States Constitutional rights to be free of cruel and unusual punishment and be afforded due process and equal protection of the law

(Compl. at 9); (2) Defendant DeWeerd failed to follow Michigan statutes and MDOC policies, rules and regulations during Plaintiff's administrative hearing, and, thus, furthered the "[] retaliation and

- 3 -

a conspiracy to cover [up] the ministerial neglect from the lack of medical care [that] was done maliciously and sadistically with a deliberate indifference to [P]laintiff's right to due process and equal protection of the law;" (3) Defendant Holmstrom violated Plaintiff's due process, equal protection and Eighth Amendment rights by participating in the unlawful misconduct charges and initiating Plaintiff's reclassification and transfer to a higher security level without a hearing; (4) Defendant Stapleton violated Plaintiff's due process and equal protection rights when he conspired to cover up Plaintiff's unlawful hearing, and Plaintiff's Eighth Amendment rights by refusing to order a rehearing; and (5) Defendants violated Plaintiff's due process rights because he has a liberty interest in the TRV program. (Compl. at 9-10.) Plaintiff alleges that he suffers from headaches, depression, anxiety and other ailments, which "may" require professional medical treatment due to Defendants' actions. (Compl. at 10.)

Plaintiff requests injunctive relief, which includes expunging all of his major misconduct violations received after August 3, 2006, restoring his institutional file to reflect his security classification on July 28, 2006, and reinstating Plaintiff to his security level prior to his administrative hearing on September 13, 2006; declaratory relief; and compensatory and punitive damages. (Compl. at 12-13.)

## II.   Failure to state a claim

A complaint fails to state a claim upon which relief can be granted when it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations of the complaint. *Jones v. City of Carlisle*, 3 F.3d 945, 947 (6th Cir. 1993). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under

color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. **Misconduct Charges**

Plaintiff claims that he was falsely convicted of two misconducts, insolence and disobeying a direct order. In his complaint, Plaintiff alleges that his misconduct convictions were major misconduct convictions rather than minor misconduct convictions. This Court, therefore, will first evaluate Plaintiff's allegations as if the convictions were major misconduct convictions. Plaintiff argues that the investigation and hearing for the misconduct charges violated his due process rights. For relief, he requests that the misconduct charges be expunged.

The Supreme Court has held that claims for declaratory relief and monetary damages, which necessarily imply the invalidity of the punishment imposed, are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to

conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits[1], his claim is not cognizable under § 1983. *Id.*; *see also Bailey v. McCoy*, No. 98-1746, 1999 WL 777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges). *See also Muhammad v. Close*, 540 U.S. 749, 754-55 (2004) (holding that the *Heck-Edwards* bar applies to prison misconduct challenges only when good-time credits are implicated).

In *Muhammad*, 540 U.S. at 754-55, the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). In other words, *Edwards* still applies where a plaintiff has lost good-time credits as the result of the misconduct conviction. Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated good-time credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good-time credits for the month of his misconduct convictions. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

---

[1] A major misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶ DDD (effective Jan. 1, 2007). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2); Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not successful, then he may seek to overturn the convictions by bringing a federal habeas corpus action.[2] Accordingly, because Plaintiff has not shown that his conviction has been invalidated, his claim is not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555 (6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (same).

Even if Plaintiff's misconduct charges were actually minor misconduct charges rather than major misconduct charges, Plaintiff's due process claims fail to state a claim. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). A five-day sentence of "toplock" for each misconduct charge does not amount to an atypical or significant hardship. *See Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000) (holding that a two-day sentence of "toplock" did not amount to an atypical or significant hardship). Because Plaintiff did not suffer

---

[2] A prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

an infringement of any liberty interest as a result of the minor misconduct charges, he fails to state a due process claim against Defendants. *Id.* (finding that the prisoner "had no due process liberty interest in the minor misconduct hearing because he did not allege any punishment that affected the duration of his confinement, or that constituted an atypical and significant hardship."); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999) (holding the prisoner "suffered no loss of good[-]time credits as a result of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution.").

### B. **Due Process - TRV Program**

Plaintiff claims that he has a liberty interest in the TRV program. Since the TRV program offers placement for eligible parolees who have committed a technical violation of parole as an alternative to parole revocation proceedings[3], Plaintiff is essentially arguing that he has a liberty interest in parole. To sustain such a claim, a prisoner must first establish that eligibility for parole is a recognized liberty interest, entitled to protection by the Due Process Clause. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see Bd. of Pardons v. Allen*, 482 U.S. 369, 381 (1987). A prisoner's unilateral expectation, particularly where prison officials retain complete discretion

---

[3]Plaintiff does not make any allegations in his complaint regarding the revocation of his parole. The Supreme Court has recognized a parolee's due process right to adequate procedures leading up to the revocation of parole. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 489 (1972). However, a prisoner must exhaust state remedies for these claims. 28 U.S.C. § 2254(b); *see Sneed v. Donahue*, 993 F.2d 1239, 1241 (6th Cir. 1993) (noting that petitioner had exhausted all state remedies before bringing habeas action); *Brewer v. Dahlberg*, 942 F.2d 328, 337 (6th Cir. 1991) (dismissing challenge to state parole revocation because state remedies arguably available). Parole revocations may be reviewed under Michigan's Administrative Procedures Act. *See Penn v. Dep't of Corr.*, 298 N.W.2d 756, 757-58 (Mich. Ct. App. 1980). In addition, a parolee may attack a revocation decision by a state petition for habeas corpus. *See Hinton v. Parole Bd.*, 383 N.W.2d 626, 629-30 (Mich. Ct. App. 1986); *Triplett v. Deputy Warden*, 371 N.W.2d 862, 865-66 (Mich. Ct. App. 1985); *see also Caley v. Hudson*, 759 F. Supp. 378, 381 (E.D. Mich. 1991) (dismissing federal habeas corpus petition by a state prisoner for lack of exhaustion of his available state habeas corpus action to challenge revocation of parole). Until a prisoner has exhausted his claims by presenting it to all levels of state judicial review, he may not maintain a habeas corpus action challenging revocation of parole.

regarding an ultimate determination, does not create a constitutionally protected entitlement or liberty interest. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972).

Liberty interests may arise from the Constitution itself or from the provisions of state law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). A prisoner has no constitutional or inherent right to be released on parole before the expiration of the prisoner's sentence. *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979). The state is therefore free to institute parole systems, but it has no duty to do so. *Id.*; *see Rose v. Haskins*, 388 F.2d 91, 93 (6th Cir. 1968). A prisoner has a liberty interest in the possibility of parole if, but only if, state law creates a legitimate expectation of parole release by the use of mandatory language limiting the discretion of the Parole Board. *See Bd. of Pardons*, 482 U.S. at 373-75. In the absence of a state-created liberty interest, the Parole Board can deny release on parole for any reason or no reason at all, and the Due Process Clause has no application. *See Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235-36 (6th Cir. 1991).

In numerous cases, this Court has reviewed Michigan law and has found a complete absence of mandatory language or the imposition of substantive predicates restricting the Parole Board's discretion. Michigan statutes merely define those prisoners not eligible for parole and list factors that the Parole Board may or may not consider in its decision to grant or deny parole, without directing a specific result. *See* MICH. COMP. LAWS §§ 791.233b, .234, .235. No statutory provision requires parole for any eligible prisoner under any circumstances. The statute makes release on parole expressly discretionary. MICH. COMP. LAWS § 791.234(11).[4]

---

[4] The Michigan parole statutes have been amended several times in recent years. The statutory citations contained above are to the present codification of the parole law. None of the recent amendments are material to the issues now before the Court. Release on parole has always been discretionary under Michigan law.

Relying upon these provisions of Michigan law, the Sixth Circuit Court of Appeals has authoritatively held that the Michigan system does not create a liberty interest in parole. *Sweeton v. Brown*, 27 F.3d 1162, 1164-165 (6th Cir. 1994) (en banc). In unpublished decisions following *Sweeton*, the Sixth Circuit has repeatedly held that particular parts of Michigan's statutory parole scheme do not create a liberty interest in parole. *See Fifer v. Mich. Dep't of Corr.*, No. 96-2322, 1997 WL 681518, at *1 (6th Cir. Oct. 30, 1997); *Moran v. McGinnis*, No. 95-1330, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Leaphart v. Gach*, No. 95-1639, 1995 WL 734480, at *2 (6th Cir. Dec. 11, 1995); *Vertin v. Gabry*, No. 94-2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995); *Neff v. Johnson*, No. 92-1818, 1993 WL 11880, at *1 (6th Cir. Jan. 21, 1993); *Janiskee v. Mich. Dep't of Corr.*, No. 91-1103, 1991 WL 76181, at *1 (6th Cir. May 9, 1991); *Haynes v. Hudson*, No. 89-2006, 1990 WL 41025, at *1 (6th Cir. Apr. 10, 1990). Further, the Michigan Supreme Court has recognized that there is no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. In the absence of a liberty interest in the TRV program, Plaintiff fails to state a claim for a violation of his due process rights.

C.     **Security Classification**

Plaintiff requests reinstatement to the security level and classification prior to his administrative hearing on September 13, 2006, for his two misconduct charges. As stated above, the Supreme Court has held that a prisoner does not have a protected liberty interest in the procedures affecting his classification and security because the resulting restraint does not impose

an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. In *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91(6th Cir. 1995), the Sixth Circuit applied the *Sandin* test to the claim of a Michigan inmate that the mandatory language of the MDOC's regulations created a liberty interest that he receive notice and hearing before being placed in administrative segregation. The *Rimmer-Bey* court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Id*; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, plaintiff cannot successfully claim that his due process rights were violated because, "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Moreover, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228-29. The Sixth Circuit has followed the Supreme Court's rulings in a variety of security classification challenges. *See Cash v. Reno*, No. 97-5220, 1997 WL 809982, at *1-2 (6th Cir. Dec. 23, 1997) (prisoner's allegation that he was placed in a security level higher than warranted based on the information contained in his prison file failed to state a due process claim because he had no constitutional right to be held in a particular prison or security classification); *O'Quinn v. Brown*, No. 92-2183, 1993 WL 80292, at *1 (6th Cir. Mar. 22, 1993) (prisoner failed to state a due process or equal protection claim regarding his label as a "homosexual predator" because he did not have

a constitutional right to a particular security level or place of confinement). Since Plaintiff does not have a constitutional right to a particular security level or classification, he fails to state a claim.

### D. **First Amendment - Retaliation**

Plaintiff claims that Defendants retaliated against him by filing misconduct charges for exercising his right to be free of cruel and unusual punishment for "a lack of medical health care services." (Compl. at 6.) In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in Defendants' alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. Conclusory allegations of retaliatory motive "with no concrete, relevant particulars" fail to raise a genuine issue of fact for trial. *Salstrom v. Sumner*, No. 91-15689, 1992 WL 72881, at *1 (9th Cir. Apr. 10, 1992); *see also Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the

ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him for exercising his Eighth Amendment rights. Accordingly, his speculative allegation fails to state a claim.

### E. **Equal Protection Clause**

Plaintiff asserts that Defendants violated his equal protection rights by conducting an unlawful misconduct hearing and reclassifying Plaintiff to a higher security level without a hearing. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Because a fundamental right is not implicated in this case and Plaintiff does not allege that he is a member of a suspect class, he is not entitled to strict scrutiny. Instead, Defendants' actions need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff does not allege that he has been treated differently from others who are similarly situated or that there is no rational basis for the difference in his treatment. Conclusory allegations of unconstitutional conduct without

specific factual allegations fail to state a claim under § 1983. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Lillard v. Shelby County Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir.1996) (citing *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir. 1986)); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985); *Turnboe v. Stegall*, No. 00-1182, 2000 WL 1679478, at *2 (6th Cir. Nov. 1, 2000). As Plaintiff provides no specific factual allegations to support his contention, he fails to state an equal protection claim.

      F.    **Eighth Amendment**

Plaintiff alleges that Defendants unlawfully conducted his misconduct hearing and increased his security level in violation of his Eighth Amendment rights. Plaintiff states that he suffers from headaches, depression, anxiety and other ailments, which "may" require professional medical treatment due to Defendants' actions. (Compl. at 10.) The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citations omitted). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while

incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

None of the conduct alleged in Plaintiff's complaint rises to the level of an Eighth Amendment violation. Assuming Defendants' actions regarding the administrative hearing and Plaintiff's increased security level may be considered the imposition of excessive punishment, Plaintiff's continued incarceration for his 1996 uttering and publishing offense falls within the maximum sentence allowed by statute.[5] The maximum penalty for uttering and publishing, MICH. COMP. LAWS § 750.249, is fourteen years. Therefore, Plaintiff's continued incarceration does not run afoul of the Eighth Amendment's ban on cruel and unusual punishment. *See Austin v. Jackson,* 213 F.3d 298, 302 (6th Cir. 2000) (finding "a sentence within the statutory maximum set by statute generally does not constitute 'cruel and unusual punishment'") (citations omitted). Accordingly, I recommend that Plaintiff's Eighth Amendment claim be dismissed.

G.     **State Law**

Plaintiff alleges that Defendants violated Michigan statutes and MDOC policies, rules and regulations. Further, Plaintiff asserts that Defendants were grossly negligent and conspired against Plaintiff. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). To the extent that Plaintiff's complaint presents allegations under state law, this Court declines to exercise jurisdiction. The Sixth Circuit has stated that district courts should generally decline to exercise supplemental jurisdiction over state law claims under these circumstances. *See Landefeld*

---

[5]Plaintiff's complaint failed to provide specific information regarding his conviction. Therefore, the Court retrieved pertinent information from the Michigan Department of Corrections Offender Tracking Information System at http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=248480.

*v. Marion Gen. Hosp.*, *Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993); *Hawley v. Burke*, No. 97-1853, 1998 WL 384557, at *2 (6th Cir. June 18, 1998).  Therefore, I recommend that Plaintiff's state law claims be dismissed without prejudice.

### Recommended Disposition

Having conducted the review now required by the Prison Litigation Reform Act, I recommend that Plaintiff's complaint be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  Should this report and recommendation be adopted, the dismissal of this action will count as a strike for purposes of 28 U.S.C. § 1915(g).

I further recommend that the Court find no good-faith basis for appeal within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).

    /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:  August 14, 2007

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).